## USHER, adm'r., vs. THOMAS.

Under the late act which authorized a *ca. sa.* on a judgment, the officer, under an execution against two, could not take the property of one defendant and the body of the other.

## APPEAL from Chariton Circuit Court.

Clark, *for Appellant, insists :*

1. That it is a well settled principle of law that an arrest of a defendant under a *ca. sa.* and a release or discharge by order of the plaintiff, is a satisfaction of the judgment upon which it issued; it is the same thing where sufficient property to pay the judgment is levied upon by virtue of a *fieri facias,* and the same is returned by order of the plaintiff, without selling the property; in both instances, the acts of the plaintiff in causing the writs returned, prevents another issue upon the ground that it is a discharge of the judgment. 3 Mo. R., 249; 12 John., 207; 2 Tidd; Bacon Abr., title Ex., 720; 8 John., 366.

2. This being a joint judgment, and Watson, one of the defendants, being arrested and then released by the plaintiff, Usher, the present defendant's intestate, who was Watson's co-defendant in the *ca. sa.,* was also thereby released. The release of one of two in a joint specialty or judgment, is clearly a release of both.

3. In this case, the present defendant was but the security of Watson in the original debt, and therefore any act of the plaintiff which released Watson from the payment of the same without the consent of the security, is a release of the security.

4. If the judgment of the plaintiff was satisfied or discharged by operation of law, or, in fact, at the time the defendant made the promise sued upon in this case, there was no consideration upon which to base the contract or undertaking, and therefore he was not bound by it. The ignorance of the defendant that the plaintiff could not have forced him to pay at the time he promised, can make no difference; the question is, could he have done so? If not, the promise and undertaking made upon the presumption on his part that he was at the time bound, when in fact he was not, is

*Usher, adm'r, vs. Thomas.*

a naked undertaking, without any consideration to support it, and is void. Story on Contracts, 77; 4 Mass. R., 443; 7 Mass., 452, 483; 5 John., 364; 1 D. & East, 712; 4 East, 455.

DAVIS, *for Appellee.*

The only error complained of is the act of the court in rejecting the evidence offered by the defendant.

The Circuit Court ruled that the evidence offered was immaterial, and if the facts proposed were proved it afforded no defence to the plaintiff's right of recovery. See Story on Contracts, page 79; 1 Metcalf R., 270; Turner vs. Crigler, 8 Mo. Rep., 16.

SCOTT, J., *delivered the opinion of the Court.*

This was an action on promises, brought by Thomas, the appellee, against Caton Usher, in which Thomas recovered judgment. After the recovery of a judgment, Caton Usher died, and this suit was revived in the name of Mary Usher, his administratrix.

In May, 1841, John Thomas recovered a judgment against Thomas Watson and Caton Usher. On this judgment an execution was issued, which being about to be executed, Usher promised Thomas that if he would direct the sheriff to return the execution not satisfied, without a sale of his property, he would pay him $100 at the return of the writ, and the balance of the debt on Christmas following. In pursuance of a written direction to the sheriff, the execution was accordingly returned. On the execution was the following endorsement, made by the sheriff:— "By virtue of the within writ, I took in my custody the body of said Watson, in said county of Chariton, on the —— day of ——, 1841, and afterwards, to wit., on the —— day of ——, 1841, I was ordered by said Thomas to stop the proceedings under said writ, and return the same." On the promise above set forth, this action was founded. The defendant offered to prove that the execution in evidence was the only one in the hands of the sheriff of Chariton county in favor of the plaintiff against the defendant and Thomas Watson; that the sheriff had arrested the body of Watson by virtue of an execution and released him before the said promise of the defendant. The court ruled out this testimony, and the defendant, Usher, excepted and appealed to this Court.

There is no doubt of the correctness of the proposition of the appellant, that an arrest of a debtor under a *ca. sa.* and a discharge therefrom, by the plaintiff in the execution will be an extinguishment of the debt; and that a release or discharge of, one of two joint debtors, will be the discharge of both, if effected with the consent of the creditor.

The proof offered in this cause does not show that Watson was discharged with the consent of the plaintiff in the execution. If he was discharged by the sheriff in consequence of the agreement between Thomas and Usher, they not knowing of his arrest at the time of the agreement, such a discharge would extinguish the debt. From the sheriff's return, it would seem that he was discharged in consequence of the agreement between Thomas and Usher.

At the common law, if two be jointly sued for a debt, a creditor could not have a *capias* against one and another kind of execution against the other. The law gave three or four kinds of executions, not altogether, but by way of choice, whereof the *ca. sa.* was one; and when the body was taken, it was full execution and could not be for part; it was an election of itself of that kind of execution, and a renouncing of the rest. Foster vs. Jackson, Hobart, fol. 59, a. By our law in force at that time, the *fi. fa.* and *ca. sa.* were blended in one writ. That writ commanded the sheriff to make the money by a levy and sale of the goods and chattels, lands and tenements of the debtor, and for a want of a sufficiency of these, he was required to take the body. Construing this writ in reference to the common law, it would seem clear, that under it a sheriff could not, on a joint execution against two, take the property of the one and the body of the other in satisfaction of the debt. The terms of the writ only authorized him to take the bodies when there was not a sufficiency of goods, lands and chattels. Whether there was such, should have been first ascertained; and if it was found that there were none, or not a sufficiency, the bodies might have been taken. Here it appears that Usher, one of the joint debtors, had sufficient property to satisfy the debt: if he had, then Watson's body could not have been lawfully taken, and his subsequent discharge was no injury to the defendant, Usher, nor was it a matter of which he could complain. The injustice of seizing under a joint execution one debtor's body and another's property, is too glaring to receive any countenance.

The other Judges concurring, the judgment will be affirmed.